UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK A. PLANCK,

       Plaintiff,

v.                                  Case No. 1:06-cv-582

COMMISSIONER OF SOCIAL        HON. ROBERT HOLMES BELL
SECURITY,

       Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on February 24, 1959 and attended two years of college  (AR 105, 139).[1] Plaintiff alleged that he had been disabled since May 31, 2002 (AR 105).  He had previous employment as a journeyman mechanic (AR 21, 134).  Plaintiff identified his disabling condition as back pain, which prevents him from bending and lifting (AR 133).  After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on September 23, 2005 (AR 21-36).  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

_____

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months.  *See* 20 C.F.R. §§ 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th

Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations

caused by her impairments and the fact that she is precluded from performing her past relevant work

through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).

However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant

number of jobs in the economy that accommodate the claimant's residual functional capacity

(determined at step four) and vocational profile." *Id.*  If it is determined that a claimant is or is not

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861

F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  Following the five steps, the

ALJ initially found that:

plaintiff engaged in substantial gainful activity from February 2004 to July 2005 and was not under a disability during this period. He has not engaged in substantial gainful activity at any other period relevant to this decision.

(AR 35). Second, the ALJ found that he suffered from a severe impairment of "degenerative joint disease of the spine and other joints" (AR 31). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 35).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to perform light work with certain limitations, i.e, "to occasionally lift and carry up to twenty pounds, frequently lift and carry up to ten pounds, occasionally stoop, crouch, crawl, and climb stairs, but never climb ladders, ropes or scaffolds" (AR 35). The ALJ found that plaintiff could not perform his past relevant work (AR 35). The ALJ also found that plaintiff's statements "regarding his limitations are generally credible, but not with respect to his claim of total disability" (AR 35).

At the fifth step, the ALJ found that plaintiff could perform a significant number of jobs in Michigan such as: industrial machine mechanic (light semi-skilled) (2,430 jobs); and machine mechanic (light skilled) (2,500 jobs) (AR 34). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 35-36).

## III.  ANALYSIS

Plaintiff raised the one issue on appeal:

> **The Unfavorable Decision inadequately considered the impact of pain during the first 21 months of Mr. Planck's disability.  For at least the closed period of May 30, 2002, to February 2004 when he returned to work part-time, Mr. Planck is entitled to benefits based on the objectively documented injury to his back.**

Plaintiff concedes that he was not entitled to receive benefits after he returned to work at a different job in February 2004. Plaintiff's Brief at 8.  This is consistent with the ALJ's determination that plaintiff engaged in substantial gainful activity as a service station attendant "[f]rom February 2004 to July  2005" (AR 33).  Having accepted this determination, plaintiff contends that he suffered from a significant back injury and disabling pain during the closed period of May 31, 2002 through February 2004.  *Id.*

### A.        Legal standard for evaluating alleged disabling pain

An ALJ's evaluation of a claimant's pain is admittedly inexact. *Jones v. Secretary of Health and Human Servs.*, 945 F.2d 1365 (6th Cir. 1991).   As the Sixth Circuit noted in *Jones*:

> The measure of an individual's pain cannot be easily reduced to a matter of neat calculations.  There are no x-rays that can be taken that would objectively show the precise level of agony that an individual is experiencing.  Hence, in evaluating the intensity and persistence of pain, both physicians and laymen alike, must often engage in guesswork.

*Id.* at 1369.  Despite the inexact nature of measuring a claimant's pain,  the ALJ must nevertheless evaluate the alleged pain and determine whether the claimant suffers from disabling pain.

While it is well-settled that pain may be so severe that it constitutes a disability, a disability cannot be established by subjective complaints of pain alone.   "An individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of

disability." *Cohen v. Secretary of Department of Health and Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992), quoting 42 U.S.C. § 423(d)(5)(A) (emphasis added). Rather, objective medical evidence that confirms the existence of pain is required. *Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-235 (6th Cir.1987). In *Duncan v. Secretary of Health & Human Services*, 801 F. 2d 847 (6th Cir. 1986), the Sixth Circuit fashioned a two-prong test for evaluating an alleged disability based upon pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1037-1039 (6th Cir. 1994) (the *Duncan* analysis is a "succinct form" of the Social Security Administration's guidelines for use in analyzing a claimant's subjective complaints of pain as set forth in 20 C.F.R. § 404.1529). To meet the first prong of the *Duncan* test, the claimant must present objective evidence of an underlying medical condition. *Duncan*, 801 F.2d 847 at 853. In order for a claimant to meet the second prong of the *Duncan* test "(1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." *Id.*

Finally, it is the ALJ's function to resolve conflicts in the evidence and determine issues of credibility. *See Siterlet v. Secretary of Health and Human Servs.*, 823 F. 2d 918, 920 (6th Cir. 1987) (per curiam); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). "It [i]s for the Secretary and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). When discrepancies exist between the claimant's testimony and the written record, the reviewing court does not substitute its credibility findings for that of the ALJ. *See Bentley v. Commissioner*, 23 Fed. Appx. 434, 436 (6th Cir. 2001); *Gooch v. Secretary of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).

**B.      Plaintiff's medical record**

The ALJ performed an exhaustive discussion of plaintiff's medical history commencing in April 2002 (AR 23-32).  The court will summarize relevant portions of this history below.

Plaintiff suffered a work injury to his back on March 28, 2002 (AR 226).  An MRI dated May 6, 2002 indicated that plaintiff suffered from bilateral lumbar radiculopathy with the following findings:

1.      The L2-3 disc is bulging in a diffuse fashion.

2.      The L3-4 disc is normal in position but desiccated.

3.      The L4-5 disc demonstrates sub-ligamentous, limited broad-based right paramedian prolapse toward the right L5 nerve root without spinal canal or foraminal obstruction.

4.      The L5-S1 disc prolapses slightly to the right of midline toward the right S1 nerve root which is not displaced.

(AR 181).  An EMG study on May 28, 2002, was abnormal, noting that "[f]indings are consistent with chronic bilateral lumbosacral radiculopathies involving L5 and S1, with superimposed recent denervation in left-sided L5 innervated muscles" (AR 176).  Plaintiff's physician, Guy J. Garrett, D.O., noted that plaintiff wanted to get a work restriction on May 30, 2002 (AR 178).

A neurosurgeon, Vincente Gracias, M.D., examined plaintiff on June 25, 2002, and gave him three treatment options: first, physical therapy; second, medications or injections at a pain clinic; and third, surgical intervention (AR 226-27).  Plaintiff chose physical therapy and attended 25 sessions at Health Motion, Inc., from July 2, 2002 through August 26, 2002 (AR 184-98, 227).  When the therapy sessions ended, plaintiff reported improved mobility but increased pain (AR 184).  The physical therapist suspected a herniated disc and sent plaintiff back to Dr. Gracias for further

7

consultation and diagnostic testing (AR 184).  On September 5, 2002, Dr. Gracias saw plaintiff and agreed to get a second opinion regarding possible surgery for bilateral L5-S1 nerve root decompression (AR 223).  On September 27, 2002, Reynaldo G. Castillo, M.D., examined plaintiff and determined that he suffered from a disc herniation at the levels of L4-5 and L5-S1 (AR 199). Dr. Castillo recommended surgery as soon as possible, noting that neither physical therapy nor pain shots would decompress the pinched nerve in plaintiff's back (AR 200).

On October 25, 2002,  Dr. Gracias performed the following surgery:

Bilateral L4 hemisemilaminectomy with excision of herniated disk bilaterally, bilateral L5 hemisemilaminectomies, excision of herniated disk 5-1 on the right and decompression of the S1 root on the left.

(AR 202-05).  During his surgery, Dr. Gracias noted that the nerve root at L5 "was quite tight" (AR 204).  The doctor found this "very interesting because this was not seen clearly on the MRI at all" (AR 204).  In addition, the S1 root required decompression (AR 204).

After the surgery, plaintiff attended 14 physical therapy sessions from December 2002 through January 2, 2003 (AR 228-36).  Plaintiff ceased attending physical therapy when his "insurance was dropped" and he could not afford the COBRA plan payments of $900 per month (AR 229).  Plaintiff continued to see Dr. Garrett, who treated him for free and gave him drug samples (AR 330-31).  In March and April 2003, Dr. Garrett found evidence of lumbar spasms and neuropathy, and prescribed Darvocet for pain and Flexeril for spasm (AR 273-77). Plaintiff reported neck and back pain in May and June 2003 (AR 271-72).  The doctor noted that an EMG performed on his lower extremities (on March 31, 2003) was normal and that he had normal nerve conduction studies on his lower limbs (AR 272). In an examination on May 28, 2003, plaintiff had no evidence of radiculopathy or weakness (AR 272).

On August 19, 2003, another treating physician, Daniel Kennedy, D.O., noted a lack of objective physical findings to support plaintiff's claim of right arm and neck pain (AR 270). The doctor suggested that there could be a psychiatric component to this pain (AR 270). Plaintiff admitted that he spent time in a psychiatric facility in the past, was diagnosed as bi-polar, and was not currently taking his medication (AR 270). The doctor prescribed Depakote for the bi-polar disease (AR 270). As the ALJ points out, on September 12, 2003, "plaintiff reported [to Dr. Kennedy] that his back pain was much improved, he was willing to tolerate the tiny bit of pain he had left, and he had no weakness in the extremities" (AR 32, 254).

Plaintiff returned to Dr. Garrett for treatment, and reported neck and back pain November 2003 (AR 251). In December 2003, he reported knee pain (AR 249).

### C.    ALJ's decision

Plaintiff points out that the ALJ, a visiting judge from Illinois, did not apply the Sixth Circuit's two-prong test for evaluating pain as set forth in *Duncan*, 801 F. 2d 847. Although neither the regulations nor acquiescence rulings require the Commissioner to use the *Duncan* test, this court typically applies the *Duncan* test on review.

Under the *Duncan* test, plaintiff has demonstrated the existence of objective medical evidence to support his claim of disabling pain. The record reflects a history of disc injury and nerve root compression requiring surgery. In addition, the ALJ found that plaintiff suffered from severe impairments of "degenerative joint disease of the spine and other joints" (AR 31). These findings demonstrate objective evidence of an underlying medical condition sufficient to satisfy the first prong of the *Duncan* test.

Although the ALJ did not use the *Duncan* test, his decision essentially concludes that plaintiff did not meet the first part of the second prong of the test, i.e., that there was insufficient objective medical evidence to confirm the severity of the alleged pain arising from plaintiff's medical condition.   The ALJ determined that plaintiff's statements regarding his symptoms and limitations were not credible with respect to his claim of total disability (AR 32).   The ALJ relies in part upon plaintiff's psychological treatment, the fact that he was no longer taking pain medication, the "limited objective findings" to support his alleged back problems, and the fact that plaintiff returned to work as a gas station attendant in February 2004 (AR 32-33).

The ALJ apparently viewed plaintiff's pain as the result of a psychological problem, i.e., "[t]he undersigned notes that this sudden revelation of greatly reduced pain and no lower extremity weakness came only a few weeks after Dr. Kennedy suggested that there might be a psychological component to the claimant's pain and prescribed Depakote" (AR 32).   Plaintiff contends that Dr. Kennedy, while filling in for plaintiff's regular physician, misconstrued the nature of his psychological condition, by misreading a neurologist's plan for a referral to a "physiatrist" as a referral to a "psychiatrist" (AR 254, 270, 291, 293).   Plaintiff correctly points out  that the neurologist mentioned a referral to a "physiatrist" rather than a "psychiatrist." While Dr. Kennedy may have misread the neurologist's report, the court is not prepared to totally discount the ALJ's decision regarding a possible psychological component to plaintiff's symptoms.  The record reflects that plaintiff had a history of bipolar disorder, and that Dr. Kennedy treated that disorder (AR 254, 270).

The court notes other weaknesses in the ALJ's conclusions.  In light of plaintiff's medical history, the court disagrees with the ALJ's statement that plaintiff had only limited objective

10

findings to support his claim of disabling back pain.  In addition, plaintiff's concession that he was not disabled after commencing work in February 2004  undercuts the ALJ's credibility argument, i.e., that plaintiff was not disabled because he returned to work.  Nevertheless, even if the the ALJ properly found that plaintiff lacked objective evidence to confirm the severity of his alleged pain, plaintiff still met the alternative basis set forth in the second part of the second prong of the *Duncan* test, i.e., that the objectively determined medical condition was "of a severity which can reasonably be expected to give rise to the alleged pain." *Duncan*,  801 F.2d at 853.

Plaintiff suffered from multiple back conditions, including a bulging disc, a desiccated disc, and nerve root compression, which required surgery and physical therapy. Plaintiff's nerve root compression is an objective medical condition which is sufficiently severe to give rise to debilitating pain under the second part of the second prong of the *Duncan* test.  *See*, *e.g.*, *Walker v. Chater*, No. 95-4256,  1997 WL 369445 at *4 (6th Cir.  July 1, 1997) (indicating that objective medical evidence of nerve root compression would satisfy the second prong of the *Duncan* standard);  *Perry v. Secretary of Health and Human Services*, No. 87-4156,  1988 WL 114816 at *1 (6th Cir. Oct. 28, 1988) (same);  *Barrow v. Secretary of Health & Human Servs.*, No. 87-6032, 1988 WL 103333 at *4 (6th Cir. Oct. 4, 1988) (indicating that objective medical evidence of nerve root irritation would satisfy the second prong of the *Duncan* standard);  *McInally v. Bowen*, No. 87-1472, 1988 WL 54085 (6th Cir. May 31, 1988) (same).

Based on this record, the ALJ erred in determining that plaintiff lacked objective medical evidence to support his claim of disabling pain.  Having found that plaintiff's condition satisfied the *Duncan* test for establishing objective evidence of his disabling pain, a factual issue arises with respect to the duration of his condition.  Assuming that plaintiff has suffered this

11

condition since his alleged onset date of May 31, 2002, this condition may well have lasted more than 12 months.  For example, evidence in the record could support a finding that his condition improved on May 28, 2003 (when Dr. Garrett found no evidence of radiculopathy or weakness), September 12, 2003 (when plaintiff reported that his back pain was much improved) or February 2004 (when plaintiff returned to work).  The determination of this factual issue is a matter for the Commissioner.  *See Brainard*, 889 F.2d at 681 (the reviewing court does not review the evidence *de novo*, make credibility determinations or weigh the evidence).

## IV.     Recommendation

Accordingly, I respectfully recommend that the Commissioner's decision be reversed and remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for a re-evaluation of plaintiff's claim for the closed period commencing May 31, 2002 and terminating no later than February 1, 2004.

Dated:  June 11, 2007                    /s/ Hugh W. Brenneman, Jr.
                                         Hugh W. Brenneman, Jr.
                                         United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).